THOMAS M. HODGENS, Respondent, *v.* COLUMBIA TRUST COMPANY, Respondent, Impleaded with FIDELITY TITLE AND TRUST COMPANY OF PITTSBURGH, Appellant.

First Department, December 20, 1918.

Process — acquisition of jurisdiction of non-resident by substituted service — necessity that property be within State at time of making of order — effect of service of summons on codefendant within State — lis pendens — order for substituted service and service thereunder vacated.

Assuming that the service of a summons is such an assertion of jurisdiction as will subject personal property of a non-resident to the jurisdiction of the court so that a judgment rendered will be operative upon it without the court having in some manner by attachment or otherwise asserted its jurisdiction over the property, said property must have been within the State at the time the court made its assertion of jurisdiction over the non-resident defendant, that is, at the time the order for substituted service of the summons was made.

In an action to recover from a depositary in this State specific property and to have canceled a lien upon said property which the defendant, a foreign corporation, had within this State, the service of the summons on the depositary gave no jurisdiction over the non-resident defendant, nor did that service give the court jurisdiction over the property of the non-resident defendant which may have been within the custody of the depositary.

Where, subsequent to the removal from the State by the non-resident defendant of its property which had been in the possession of the depositary, the plaintiff obtained an order for service of summons in the action by publication or personally in the foreign State, and service was so made, the court did not thereby acquire jurisdiction over the defendant, and any judgment that may be entered will not be enforcible, and hence a motion to vacate and set aside the order for substituted service and to vacate and set aside the service should be granted.

Even if the common-law rule of *lis pendens* relating to personal property is applicable in this State, the notice of the pendency of an action does not arise before the filing of the bill or declaration.

APPEAL by the defendant, Fidelity Title and Trust Company of Pittsburgh, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 7th day of June, 1918, resettling a prior order entered on the 8th day of May, 1918, denying appellant's motion to vacate and set aside the order for substituted service of the summons upon it and to vacate and set aside the service of summons made pursuant to said order.

*Philip L. Miller* of counsel [*Clarke M. Rosecrantz* with him on the brief; *Sullivan & Cromwell,* attorneys], for the appellant.

*George E. Blackwell* of counsel [*Blackwell Bros.,* attorneys], for the respondent.

PAGE, J.:

The facts in this case as disclosed by the complaint and affidavits are substantially as follows:·

That John Sloan, Chester Glass and Joseph C. Blanch and the plaintiff, being each the owner of 1,000 shares constituting in the aggregate the entire capital stock of the Eastern Metals Corporation, entered into an agreement whereby for ten years they bound themselves and their personal representatives not to pledge, hypothecate or sell any of their shares without first offering the stock so proposed to be pledged, hypothecated or sold to the other parties to the agreement and to each of them or to their representatives, giving them a ten days' option to purchase such shares or advance money thereon at the same price and terms as may, at any time, be offered in good faith by any person not a party to this contract.

Thereafter John Sloan was declared a lunatic in the courts of the State of Pennsylvania, and the defendant Fidelity Title and Trust Company of Pittsburgh was appointed committee of his property. On or about the 10th day of April, 1914, the Fidelity Title and Trust Company in its own name entered into an executory agreement with the plaintiff, whereby it agreed to sell fifteen months after the said date, and the plaintiff agreed to purchase, 875 shares of the stock of the Eastern Metals Corporation formerly belonging to the said Sloan, and it

was agreed that the plaintiff would deposit with the Columbia-Knickerbocker Trust Company at the city of New York two promissory notes made by him to the order of the Fidelity Title and Trust Company, one of such notes to be due in twelve months and one in fifteen months and each to be for the sum of $3,500, and as collateral security for the same to deposit with the Columbia-Knickerbocker Trust Company $15,000 par value bonds of the Fairfield Oil Company, and the Fidelity Title and Trust Company agreed to deposit with the Columbia-Knickerbocker Trust Company 750 shares of the stock of the said Eastern Metals Corporation, and further agreed that the Columbia-Knickerbocker Trust Company should hold on deposit, for the purpose of transfer and delivery to the plaintiff in accordance with the said agreement, 125 additional shares of the stock of the Eastern Metals Corporation already on deposit with it, and the Fidelity Title and Trust Company further agreed that upon payment of said notes at their maturity it would transfer to the plaintiff the said 875 shares of the stock with assignments thereof and would also deliver or cause to be delivered to the plaintiff the bonds of the Fairfield Oil Company. It was further agreed that the sale of said stock was in consideration of the said notes, and in order to complete same it was necessary that there should be delivered to the plaintiff written consents of Chester Glass and Joseph C. Blanch.

In pursuance of this agreement the parties deposited the stock, notes and bonds with the Columbia-Knickerbocker Trust Company. Chester Glass and Joseph C. Blanch refused to consent to the sale and transfer of the stock and the performance of the agreement on the part of the Fidelity Title and Trust Company.

On or about the twenty-ninth day of June the plaintiff demanded of the Columbia-Knickerbocker Trust Company that it deliver to him the promissory notes and bonds of the Fairfield Oil Company, and again after the maturity of the notes the plaintiff in like manner demanded of the Columbia-Knickerbocker Trust Company the delivery of such notes and bonds to him, and again, immediately prior to the bringing of this action, made demand for the same and also demanded of the Fidelity Title and Trust Company that it consent to or

instruct the delivery of the said notes and bonds to the plaintiff.

On the twentieth day of November plaintiff commenced this action by the service of a summons without a complaint upon the defendant Columbia Trust Company (the successor to the Columbia-Knickerbocker Trust Company). At that time the notes, stock and a certain deposit receipt which had been substituted for the bonds were in the possession of the Columbia Trust Company. On the seventeenth day of November the attorney for the Fidelity Title and Trust Company demanded that the Columbia Trust Company deliver to him on behalf of the Fidelity Title and Trust Company the notes and securities described in the agreements and offered to furnish such indemnity as might be satisfactory to the said Columbia Trust Company. The Columbia Trust Company desired the advice of counsel, and on the twentieth day of November pursuant to advice of counsel the Columbia Trust Company agreed to deliver the notes and securities on the furnishing of a satisfactory bond of indemnity, and the bond having been given on the twenty-first day of November, in the presence of the plaintiff, the two notes and the deposit receipt and the certificate for 750 shares of the stock of the Eastern Metals Corporation and a check for $747.30, for interest, were delivered to the attorney for the Fidelity Title and Trust Company and he immediately deposited the same in the United States mail addressed to the Fidelity Title and Trust Company at Pittsburgh, Penn.

Thereafter, and on the 9th day of January, 1918, the plaintiff obtained an order for service of the summons in the action by publication or personally in the State of Pennsylvania upon the defendant Fidelity Title and Trust Company of Pittsburgh.

The summons, together with a copy of the complaint, was on the twelfth day of January served on the Fidelity Title and Trust Company of Pittsburgh in the city of Pittsburgh. The Fidelity Title and Trust Company appearing specially for the purpose of the motion only moved to vacate and set aside the order and to set aside the service of the summons and complaint upon it. This motion was denied. The learned justice at Special Term has written a very elaborate opinion

in which he has worked out a very ingenious theory for upholding the jurisdiction of the court over the moving defendant. Briefly summarized, his theory is this: That the defendant being a foreign corporation the court could only get jurisdiction by substituted service if there was property belonging to it within the State at the time the court asserted jurisdiction; that this action, which was brought to recover from the depositary specific property and to have canceled a lien upon that property which the defendant, the foreign corporation, had within this State, was an action *quasi in rem* and that the court obtained jurisdiction when jurisdiction was asserted, which he construed to be when the summons was served upon the Columbia Trust Company, and that the subsequent removal of the property from the State could not divest the court of jurisdiction. (See 103 Misc. Rep. 415.)

Assuming, but not holding, that the service of a summons is such an assertion of jurisdiction as would subject personal property to the jurisdiction of the court so that a judgment rendered would be operative upon it without the court having in some manner by attachment or otherwise asserted its jurisdiction over the property, it is clear that the property must have been within the State at the time the court made its assertion of jurisdiction over the non-resident defendant and that was at the time that the order for substituted service of the summons was made. (*Chesley* v. *Morton,* 9 App. Div. 461; *Freeman* v. *Alderson,* 119 U. S. 185, 187.)

The service of the summons on the codefendant, the Columbia Trust Company, could give no jurisdiction over the non-resident defendant, nor did that service give the court jurisdiction over the property of the non-resident defendant which may have been within the custody of the Columbia Trust Company.

This will conclusively appear, if we consider what would have been the result of a default of the Columbia Trust Company and no service by publication or otherwise upon the non-resident defendant. No complaint having been filed or served, no attachment or injunction granted, by no possibility could a judgment have been enforced against the non-resident defendant's property, which was not then within the State, nor could the Columbia Trust Company have been punished for

having permitted the removal of the property subsequent to the service of the summons upon it. Even if the common-law rule of *lis pendens*, in so far as it related to personal property, is applicable in this State, the notice of the pendency of the action would not arise before the filing of the bill or declaration. (*Leitch* v. *Wells*, 48 N. Y. 585, 601 *et seq.*) The reason of this rule is obvious. There must be some writing or record, brought actually or constructively to the notice of the person sought to be charged, which would inform him that a claim was made on the property by action brought. Therefore, in the case under consideration, we must consider the situation that existed at the time the order for service without the State and service thereunder of a summons and complaint on the non-resident defendant. At that time there was no property of the non-resident defendant within the State.

An action brought against a non-resident where substituted service or personal service outside of the territorial jurisdiction is made, is in the nature of an action *in rem.* (*Pennoyer* v. *Neff*, 95 U. S. 714.) This does not mean, however, that the fact of non-residence changes the character of the action, but as jurisdiction must be obtained over either the person or property there must be property which can be subjected to the operation of the judgment over which the court asserts its jurisdiction by some appropriate proceeding. If there be no *res* within the State, there is nothing upon which the court can exercise its jurisdiction. (*German-American Coffee Co.* v. *Johnston, No. 1*, 168 App. Div. 31, 35.) In the case last above cited the action had been commenced against a non-resident by personal service of the summons and complaint within the State. He appeared and demurred to the complaint and thereafter died. A motion was made to revive the action and bring in his executors as parties defendant. The motion was granted and a supplemental summons was ordered to be served on the executors by publication or personally without the State. On appeal this court struck out the provision in the order for service of the summons. In *Logan* v. *Greenwich Trust Co.* (144 App. Div. 372; affd., on opinion in this court, 203 N. Y. 611) the action was brought against a non-resident and property attached. On the death of the defendant, an order for revival and service of the non-resident executors by pub-

lication was sustained, but solely for the reason that the court had acquired jurisdiction of property by attachment, and the court distinctly pointed out that if the executors did not appear, judgment could only be satisfied out of the property attached.

If the non-resident defendant should not appear and thus subject itself to the jurisdiction of the court, no judgment could be entered that could be enforced. If the court should order the agreement to be canceled and the notes and bonds to be delivered by defendants, how could it make its order effective? If it should grant an injunction restraining the defendants from selling and transferring the stock, the stock being in the possession of the non-resident defendant, how could it be restrained or punished for a violation of the order? Or if a receiver were appointed, what powers would he possess over the defendant appellant? These questions are paraphrased from those asked by the Court of Appeals in *Bryan* v. *University Publishing Co. of N. Y.* (112 N. Y. 382, 387), and the court further said: " The court can give no relief and the impropriety of issuing an order which, if it leads to a judgment, ' would operate on nothing in the State and be regarded by nobody out of it,' becomes apparent. It offends every principle by which the jurisdiction of a court can be vindicated, and should not be allowed to stand." The United States Supreme Court has recently held that the full faith and credit clause and the due process clause of the Federal Constitution (Art. 4, § 1; 14th Amendt. § 1) are harmonious, and because one may be applicable to prevent a void judgment from being enforced affords no ground for denying efficacy to the other in order to permit a void judgment to be entered. (*Riverside Mills* v. *Menefee*, 237 U. S. 189, 197.)

When the jurisdiction of the court is challenged it should be determined. The motion papers disclosed that this court had not acquired jurisdiction over the defendant appellant and any judgment that might be entered could not in any way be enforced against it. The motion to vacate the order and set aside the service made in pursuance thereto should have been granted.

The order appealed from will, therefore, be reversed, with

ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.